EUREKA IRON AND STEEL WORKS v. TIMOTHY BRESNAHAN
AND HORACE L. DELANO.

*Manufacturing corporation—Chattel mortgage—May be executed by its presi-
dent and secretary and treasurer, by direction of all of its directors and
stockholders—Evidence of such direction need not be shown by the cor-
porate record—Fraud—Question for the jury—General powers
and liabilities of corporations defined—Authority of officers
to execute necessary contracts—Presumed in the absence
of statutory provisions to the contrary.*

1. A chattel mortgage executed in the name of a manufacturing corpor-
ation, by its president and secretary and treasurer, in the presence
and by the direction of all of its directors and stockholders, but
without any formal recorded action authorizing such execution, is,
prima facie, a valid instrument.

2. Where such a mortgage is offered in evidence on a trial before a jury,
and is attacked by attaching creditors as fraudulent, the court can-
not pass upon that question and direct a verdict, but it must be deter-
mined by the jury.

3. The recorded action or direction of the board of directors of such a
corporation is no more than *written* evidence thereof; and unless the
statute has prescribed the mode and manner in which action shall be
taken, and forbids its being taken in any other way, the stockholders
may take such action in such manner and at such times as they may
deem best.

4. A corporation may transact all such matters as, being auxiliary to its
primary business, are transacted by ordinary individuals under simi-
lar circumstances, and is bound by the same implications and infer-
ences as natural persons; and if it has the right to create a debt, it
has power to secure its payment in any form not prohibited by law.

5. In the absence of any provision to the contrary contained in the char-
ter of a corporation, it will be presumed that its president, secretary,
and treasurer have authority to make all necessary contracts in
transacting its ordinary business, within the legitimate scope, object,
and purposes of its organization.

Error to Muskegon.  (Russell, J.)  Argued February 9,
1886.  Decided April 8, 1886.

Trover.  Plaintiff brings error.  Reversed.  The facts are
stated in the opinion.

*Keating & Dickerman, John H. Bissell,* and *H. M. Campbell,* for appellant:

The mortgage was properly executed by the proper officers, which execution was authorized by the board of directors; and a formal resolution was unnecessary: Jones on Chat. Mortgages, § 51. A seal was also unnecessary: 1 Potter on Corp. § 37, citing 2 Kent's Com. (12th ed.) 289; and, if a further authority could be of any advantage, such execution was authorized by the entire body of stockholders.

*Subsequent* knowledge and acquiescence by the directors and corporators are equivalent to previous and formal authority from the same sources: *McLaughlin v. D. & M. Ry. Co.,* 8 Mich. 100; Angell & Ames on Corp. § 304; *Walker v. Det. Transit Ry. Co.,* 47 Mich. 348; and *previous* knowledge and assent are still stronger.

If defendants had a right, as judgment creditors, to question the validity of this mortgage, they could not challenge it for any informalities or irregularities (Taylor Private Corp. § 813), the only questions they could inquire into being:

(*a*) Was its execution within the *power* of the corporation?

(*b*) If yea, was it void for want of consideration, and in fraud of creditors?

*Smith, Nims, Hoyt & Erwin,* for defendants:

The officers who signed the mortgage were not authorized expressly or impliedly by the corporation to sign the instrument in its behalf. The affairs and business of the corporation were to be conducted by a board of directors—section 4132, How. Stat.—a majority of whom formed a board for the transaction of business; and the decision of a majority of those *duly assembled as a board* was requisite to make a valid corporate act: *McCullough v. Moss,* 5 Den. 575. It is not sufficient that the president, secretary, and treasurer constitute a majority of the board, although their united vote at a meeting of the board of directors might have authorized the act: *Doyle v. Mizner,* 42 Mich. 341; they had no authority to execute the mortgage without authority from the board: *Cattron v. First Universalist Society,* 46 Ia. 106.

Woodard being a large stockholder in the Novelty Iron Works, the mortgage should be considered as though payable to him, and the law does not permit one who acts in a fiduci-

ary capacity to deal with himself, and express contracts thus made are contrary to public policy: *Wilbur v. Lynde*, 49 Cal. 290; *Titus v. Great Western Turnpike Road*, 5 Lans. 250; *Claflin v. Farmers' Bank*, 25 N. Y. 293.

The capital stock of an incorporated company is a substitute for the personal liability which subsists in private copartnerships. Creditors have a lien upon it in equity. If diverted, they may follow it as far as it can be traced and subject it to the payment of their claims, except as against bona fide holders. It is publicly pledged to those who deal with the corporation for their security: *County of Morgan v. Allen*, 103 U. S. 508.

It being conclusively shown that one object, if not the principal object, of making the mortgage was to "keep off" other creditors, and that it was intentionally given and accepted to secure a greater sum than was owing to the mortgagee, the evidence of fraud was sufficient: *Willison v. Desenberg*, 41 Mich. 161; *Covert v. Rogers*, 38 Mich. 369.

SHERWOOD, J. On the nineteenth day of June, 1884, Charles E. Woodard, secretary and treasurer, and H. S. Servoss, president, of the Woodard Manufacturing Company, executed a chattel mortgage upon all its property to the Muskegon Iron Works, a corporation of which said Woodard was also secretary and treasurer, he acting in both capacities by virtue of the by-laws of the corporation.

The mortgage was executed to secure the payment of the sum of $4,700. Four thousand two hundred dollars, however, was the actual amount then due from the mortgagor to the mortgagee, but inasmuch as the mortgagor was getting goods constantly from the Novelty Works upon credit, the amount was placed at the first sum named, believing that would no more than cover the full amount of credit required to meet their immediate approaching necessities. No seal was attached to the mortgage, as the company had not yet obtained one. There was no formal action, or the record of any action taken, carried on the records of the company authorizing the making of the mortgage; but it was agreed upon and assented to by all the directors and stockholders of the company assembled together, and the mortgage was drafted and executed in their presence. After it was executed,

the secretary of the Novelty Works took it, and locked it up in the safe of that company, and filed a copy of the same in the recorder's office in Muskegon city.

The mortgage was signed, " The Woodard Manufacturing Company, by Charles E. Woodard, secretary and treasurer. H. S. Servoss, president."

The mortgage was duly assigned and transferred on the twenty-fifth day of October, 1884, to the plaintiff, as collateral security for the payment of a debt which the Muskegon Novelty Iron Works owed the plaintiff, of about $8,000; and said assignment was duly filed in the recorder's office with the mortgage. Before the year from the time the mortgage was made expired, the assignee caused the proper affidavit to renew the same to be made and filed as required by statute.

In May, 1885, the chattel mortgaged property was attached by creditors of the Woodard Manufacturing Company; judgments were obtained on their claims; and said property, under executions issued thereon, was seized, advertised, and sold by the defendant Bresnahan, who was sheriff, to the other defendant, Delano, against the protest and in utter disregard of the mortgage interest of the plaintiff, though fully notified by the record and personally of the nature and character of such interest. It was not sold even subject to the plaintiff's lien.

After the sale the plaintiff caused demand to be made upon both the defendants for possession of the mortgaged property, which was refused; and thereupon the plaintiff brought this suit in trover to recover the value of its interest under the chattel mortgage in said property. The declaration contained the usual counts in trover.

The defendants pleaded the general issue, and therewith gave notice that they would justify the conversion of the property, under and by virtue of the judgments and executions rendered and issued against the Woodard Manufacturing Company.

The cause was tried in the Muskegon circuit before Judge Russell, with a jury; and, under the special direction of the

court, a verdict was rendered in favor of the defendants, and the plaintiff brings error.

On the trial the plaintiff's counsel offered in evidence the chattel mortgage, after proving its execution as hereinbefore stated by the mortgagor, which was objected to by defendants' counsel upon the following grounds:

1. Because the president and secretary of the Woodard Manufacturing Company had never been authorized to make the mortgage.

2. Because the secretary of the said company was a heavy stockholder in the Novelty Company, and its secretary, and the mortgage made by him from the one to the other as secretary was without the right so to do, and void.

3. Because the mortgage was executed without any authority from the board of directors, acting as such.

4. Because the officers who purport to have executed this mortgage were not competent in law to bind the corporation, and were not authorized expressly or impliedly by the corporation to sign the instrument in its behalf; and because it appears, from the testimony already in, that one of the objects of executing the mortgage was to cover the property to prevent its being attached by creditors, and that this agent for both corporations had knowledge of that fact, and that, being secretary and treasurer of the Novelty Iron Works, and a stockholder to the extent named, it was incompetent for him to execute this mortgage.

5. Because it does not appear that there was ever a delivery of this mortgage from the Woodard Manufacturing Company to the Muskegon Novelty Iron Works.

The court sustained the objection, and held that it is not the mortgage of the Woodard Manufacturing Company, nor such a mortgage as the president and treasurer were authorized to make, under the testimony given.

Counsel for plaintiff then offered to prove the following facts in addition to those already stated: That the mortgage, after being made and executed, was duly delivered to the mortgagee, and filed by its direction on the day it was made; that when the mortgage was assigned to the plaintiff the indebtedness of the Novelty Works to it was past due; that at the time the plaintiff made demand for the chattel mortgage property the defendants had possession of

the property, and converted it to their own use, and that the mortgage indebtedness was then due, and had been for some time before possession was taken by the defendants; that at the time this suit was commenced the plaintiff was the *bona fide* owner of the chattel mortgage; and that the mortgaged property, at the time the plaintiff made demand therefor, was worth $4,000; and that the judgments under which the execution sale was made of the property to the defendant were not valid.

The court ruled the testimony inadmissible because the mortgage had been excluded, and that it was the basis of plaintiff's right to recover.

We think both these rulings were erroneous.

Of course, neither party could deny the existence of the Woodard Manufacturing Company; both claim title through it. It is not claimed that it could not make a valid chattel mortgage at the time it did, but that the company could not make such mortgage except at a regular meeting, or one called in accordance with the by-laws of the corporation, of the directors; that such mortgage could not be legally made, though all the directors and stockholders in the company were present and consented to and directed it to be done, as in this case, unless at a duly authorized meeting of the same, or of its directors.

We cannot agree with this doctrine. It would make the thing created greater than its creators. It would, in this case, operate a gross injustice. The mortgage of the plaintiff is really a purchase-money mortgage; and it is neither justice, nor the policy of the law, to allow a claim of this character to be defeated through any informality or technicality of the proceedings taken or practice sought to be applied.

The corporation had no greater interest in the company property than all the members composing the corporation. Certainly, had they all joined in a conveyance of their interest in the property, there would be nothing left which the company could control or convey. And if all, being present, direct the secretary and president to make such conveyance in the name of the company, there is no reason why it

should not be bound by the conveyance, and the purchaser take a good title to the property, unless it was made to defraud creditors. That question, however, would be determined only by the jury. The court could not pass upon that question and direct the verdict.

The recorded action or direction of the board of directors is no more than written evidence of that action and that direction ; and unless the statute has prescribed the mode and manner in which action shall be taken, and forbids it being taken in any other way, the stockholders may take the action in such manner and at such times as they may deem best. The statute does not, in this case, interfere at all with such action and such direction.

There is no question but that the giving of the mortgage security in this case was within the corporate powers of the Woodard Manufacturing Company, of Muskegon. Neither is there any question but that a majority of the directors may bind the corporation, when assembled to take lawful action under the rules and regulations of the company. This is only because of the assent given by all that such action shall be binding, and when the assent of all has been had in any other manner, unless, as we have said, when expressly prohibited by the statute, the action will be binding, and its validity will not be allowed to be questioned either directly or collaterally. "Corporations may transact all such matters as, being auxiliary to their primary business, are transacted by ordinary individuals under similar circumstances:" Brice, Ultra Vires, 66 *et seq.*; *Reynolds v. Stark Co.*, 5 Ohio, 205 ; *Barry v. Merchants' Exch. Co.*, 1 Sanf. Ch. 280 : *Brady v. Mayor, etc.*, 1 Barb. 584 ; *Madison, etc., Plank Road Co. v. Watertown, etc., Plank Road Co.*, 5 Wis. 173 ; *Macon v. Macon & W. R. Co.*, 7 Ga. 221 ; *Hamilton v. Lycoming Ins. Co.*, 5 Penn. St. 339. They are bound, also, by the same implications and inferences as natural persons : *Bates v. Bank of Alabama*, 2 Ala. (N. S.) 451 ; and a corporation, having the right to create a debt, has the necessary power to give securities for its repayment in any form not prohibited by law : *Dubois v. New York & H. R. R. Co.* 1 N. Y. Leg. Obs.

3.62; *Curtis v. Leavitt*, 15 N. Y. 9; *Barnes v. Ontario Bank*, 19 N. Y. 152; *Conant v. Bellows Falls Canal Co.*, 29 Vt. 263.

In the absence of any provision to the contrary contained in the charter of a corporation, it will be presumed that its president, secretary, and treasurer have the authority to make all necessary contracts in transacting the ordinary business of the corporation, within the legitimate scope, object, and purposes of its organization.

The mortgage in this case was clearly within this rule. Its due execution was proved, and the consideration given therefor. None of the stockholders have ever questioned its validity, or sought to repudiate it, and it should have been allowed in evidence. This is sufficient to dispose of the case; but on both grounds stated we think the court erred, and the judgment must be reversed, and a new trial granted.

The other Justices concurred.