[No. 10106.   Department Two.   April 8, 1912.]

HOLLON PARKER, *Respondent*, v. DORSEY M. HILL, *as Receiver of the Walla Walla Fire Insurance Company, Appellant*.[1]

CORPORATIONS—REPRESENTATION— OWNERS — APPARENT AUTHORITY OF OFFICERS AND AGENTS—CONTRACTS—LIABILITY—INNOCENT PARTIES —EQUITY.   Under the rule that persons dealing with corporate agencies have a right to rely upon the apparent authority of those in charge, and the rule that, whenever one of two innocent persons must suffer, he who has enabled a third person to occasion the loss must sustain it, mortgages and notes executed by the secretary of a holding company, by authority of its active managers holding the stock as trustees, which notes and mortgages were given in consideration of the stock of a fire insurance company without the knowledge or consent of the *cestui que trust* and real owner of the stock, are valid and binding obligations, as between the *cestui que trust* and the creditors of the fire insurance company, where it appears that the holding company, organized primarily for that purpose, was in fact more than a holding company, and had power to purchase the stock of other companies and to do a general agency and traffic business, that all of the stock of such company was, by the owner and president, placed in the absolute control of trustees as active managers and stockholders, who did engage in an agency and other business with the approval of the *cestui que trust*, and their purchase of the stock of the fire insurance company, in consideration of the notes and mortgages of the holding company, executed by one of the trustees as secretary who was in charge of the principal office, was ratified by a vote of the stockholders holding practically all of the stock for the purpose of managing and controlling the company.

Appeal from a judgment of the superior court for Walla Walla county, Miller, J., entered June 6, 1911, upon findings in favor of the plaintiff, in an action for cancellation of mortgages.   Reversed.

*Reynolds & Bond*, for appellant.

*Lester S. Wilson* and *Ralph E. Moody*, for respondent.

[1]Reported in 122 Pac. 618.

MOUNT, J.—This action was brought by the plaintiff, to set aside and cancel six certain real estate mortgages securing the payment of six promissory notes aggregating $125,-600. These notes and mortgages were executed by the Hollon Parker Company, a corporation, by O. G. Parker, its secretary, and are now held by the receiver of the Walla Walla Fire Insurance Company, an insolvent corporation. The plaintiff seeks to set these mortgages aside, upon the ground that they were wrongfully and fraudulently issued, without consideration, and without authority of the Hollon Parker Company, and without knowledge or notice to the plaintiff. The defendant Hollon Parker Company made no answer. The defendant Dorsey M. Hill, receiver of the Walla Walla Fire Insurance Company, answered the complaint, and denied the allegations of fraud, want of consideration, etc., and by cross-complaint sought a foreclosure of the mortgages. Upon a trial of these issues, the court found that the mortgages were fraudulently issued, substantially as alleged, and entered a decree as prayed for in the complaint. The receiver has appealed.

The facts, in brief, are substantially as follows: The plaintiff, Hollon Parker, prior to the year 1904, had acquired large tracts of valuable farming lands in Walla Walla and Columbia counties, in this state. He also owned a number of city lots in the city of Walla Walla, a few of which were improved, the rest vacant and unimproved. In December of 1904, he formed a corporation called the Hollon Parker Company, with its principal place of business at Walla Walla, Washington. This corporation has a capital stock of one thousand shares of the par value of $10 each. He subscribed for 996 of these shares. His only son, Orrin G. Parker, subscribed for one share, C. K. Holloway one share, Lester S. Wilson one share, and S. E. King one share. Mr. Hollon Parker thereupon deeded to this corporation a large part of his real estate, including the property in controversy, except the two parcels hereinafter referred to.

The value of the property thus conveyed to this corporation was about $300,000. He testified that his object in forming this corporation was for a mere holding corporation for the convenient disposition of his property after his death. At that time he was seventy-two years of age. The objects of the corporation, as stated in the articles, are as follows:

"The object and purpose for which this corporation is formed is to purchase, own, control, lease and sell real and personal property for and on its own account, or on commission as agent for others as may be convenient, desirable or necessary in the conduct of its business; to build, either as owner or for other persons, all manner of structures, and to sell, lease, or otherwise dispose of the same if on its own account, and for a fixed compensation if for the use and benefit of other persons or corporations. To own and hold stock of other corporations and to sell or otherwise dispose of the same if desirable. To act as trustee; to accept and execute any trust fiduciary or otherwise, which may be committed to it by any person, corporation or committee, or by the order or direction of any court. To act as escrow holding agent for others in the negotiation of loans, purchase of stock, bonds or other securities, or in the sale thereof for a commission and to make loans on real or personal security. To own and operate warehouses whether for public or private use and to collect, if for public use, a charge of storage. To engage in the business of farming and the marketing of all kinds of farm products; or raising any or all kinds of live stock and to sell or otherwise dispose of the same and to do such other business in connection with the aforesaid as may properly be consistent with the objects and purposes of this corporation."

At the first meeting of the stockholders, all of whom were trustees, Mr. Hollon Parker was elected president and his son, Orrin G. Parker, was elected secretary and treasurer. Thereafter for two or three years, Mr. Orrin G. Parker and C. K. Holloway did an extensive loan business in the name of the Hollon Parker Company. Mr. Hollon Parker knew of this business and made no objections thereto. The proceeds of this loan business appear to have been divided

between Orrin G. Parker and C. K. Holloway.   Mr. Hollon Parker appears to have received the rents of the real estate belonging to the corporation.   In May of 1905, Mr. Hollon Parker, being in poor health, left Walla Walla and went to Seattle, where he remained a few months, and then went to Portland, Oregon, where he has remained ever since.   In December of 1906, he executed a declaration of trust as follows:

"For the purposes herein stated, I hereby appoint Orrin G. Parker and C. K. Holloway joint trustees and hereby assign and deliver to them as such for my own use as hereinafter stated, all the shares of the capital stock of the Hollon Parker Company, a corporation under the laws of Washington, standing in my name or to which I may be entitled, and I hereby authorize said trustees to surrender to the secretary of the said corporation all shares of said stock outstanding in my name for the purpose of having new stock issued to them upon the books of said company as such trustees.

"(1)   I hereby reserve during the period of my life the issues and profits accruing to the ownership of said shares of stock.

"(2)   Upon my death, I direct my trustees herein named to vote, manage and control the said stock in such way as to them seems best for the interests of said company, and after payment of the expenses of operation of said company any profits derived therefrom shall be re-invested by said trustees in such manner as may be agreeable, until the infant son of Orrin G. Parker (my grandson) shall arrive at the age of majority, at which time said trusteeship shall terminate, provided that said Orrin G. Parker shall not then be the father of any other living children not of age; but if such be the case, that is to say, if he shall have other children then living, then said trusteeship shall continue until the youngest living child shall arrive at the age of majority.

"(3)   In case of the death of both my said son Orrin G. Parker and his son (my grandson), then I direct that my trustees or the survivors of them shall continue to manage and control said stock and devote the proceeds arising therefrom under the direction of the trustees of Whitman college,

located at Walla Walla, Washington, in the same manner as
provision has been made in my will for the income from my
'Dixie farm,' it being my expressed wish and desire that said
stock shall never pass into the possession or control of the
wife of my said son or her heirs and assigns other than as the
same shall in law be the heirs of my said son, Orrin G.
Parker.

"(4)   I direct my trustees hereinbefore named as soon
as there shall be a vacancy in the present board of trustees,
to issue to my lifelong friend J. B. Gehr, one share of said
capital stock so that he may qualify as one of the board of
trustees of said corporation.

"(5)   In case of the death of either of said Orrin G.
Parker and C. K. Holloway, I request that D. H. Cox, first,
and O. P. Jaycox, second, be appointed as successors to such
deceased trustee or trustees.

"In witness whereof I have set my hand hereunto in tripli-
cate, this 8th day of December, 1906.      Hollon Parker.

"I hereby accept the above trust and agree to carry out
its terms and provisions.               C. K. Holloway,

                                        "J. B. Gehr,

                                        "O. G. Parker."

This declaration of trust was filed for record on Febru-
ary 1, 1909.   Within a few days after this declaration of
trust was made and accepted, all the stock of the corpora-
tion held by Hollon Parker, except one share, was surren-
dered by him and was reissued to Orrin G. Parker and
C. K. Holloway jointly.   Hollon Parker remained president
of the corporation.   A few months later, another declara-
tion of trust was made by Mr. Hollon Parker.   This latter
declaration did not change the powers of the trustees.   It
modified the disposition to be made of certain proceeds after
his death, but otherwise reaffirmed the powers of the trustees.
Hollon Parker remained in Portland, Oregon.   The active
management of the company was conducted by Orrin G.
Parker and C. K. Holloway.

In January of 1907, C. K. Holloway and Orrin G. Parker
organized the Walla Walla Fire Insurance Company, with
a capital stock of 3,000 shares, par value $100 per share.

These shares were subscribed for on the basis of $133.43 per share, in order to make a surplus of $100,000. C. K. Holloway and Orrin G. Parker subscribed jointly for 2,424 of these shares. Other persons subscribed for the remainder of the stock. At the first meeting of the stockholders of this fire insurance company, C. K. Holloway was elected president and Orrin G. Parker secretary. Very little money was paid upon the stock subscriptions. The subscribers executed their promissory notes to the company in payment of their subscription for stock. Before the insurance company was authorized to do business in this state, it became necessary to raise $50,000. Mr. Holloway thereupon made an arrangement with J. L. Elam, by which arrangement Mr. Elam's bank at Walla Walla agreed to credit the Walla Walla Fire Insurance Company with $50,000 not subject to check, provided the Hollon Parker Company would deposit its notes secured by mortgage for that amount upon real estate of the Hollon Parker Company. This was done. The note and mortgage were executed by the Hollon Parker Company by Orrin G. Parker, secretary. It was agreed that this mortgage should not be placed of record, and that it should be assigned to the Walla Walla Fire Insurance Company upon demand. Hollon Parker, the plaintiff, did not know of this transaction. When the note and mortgage were deposited with Mr. Elam's bank, that bank gave a credit to the Walla Walla Fire Insurance Company for $50,000, and sent a telegram to the insurance commissioner at Olympia as follows:

"Walla Walla Fire Insurance Company has to the credit of its capital stock account $50,000 with this bank, not subject to check."

The fire insurance company was then authorized to do business in this state. Later this mortgage appears to have been misplaced and a duplicate was executed. It was, upon demand, assigned to the Walla Walla Fire Insurance Company, and that company subsequently reassigned to Mr.

Elam to secure advances thereafter to be made. At the time this action was begun, this note and mortgage were still held by Mr. Elam's bank upon a claim for some $8,000 advanced to the fire insurance company upon the strength of that security. Another action for the cancellation of this mortgage was brought by the plaintiff, at the same time this action was brought to secure the cancellation of the mortgages in question in this action. That action and this were tried upon the same facts, with the same results, and both are appealed upon the same record.

Immediately after this $50,000 note and mortgage were executed as above stated, and on February 1, 1907, the Hollon Parker Company, by O. G. Parker, its secretary, executed two other notes, one for $30,000 and one for $35,000, and secured the same by a mortgage upon the real estate of the Hollon Parker Company in Walla Walla, Washington. These notes and mortgages appear to have been made to take the place of or secure a note of $65,000, executed by O. G. Parker and C. K. Holloway to the Walla Walla Fire Insurance Company, and indorsed by the Hollon Parker Company, for stock subscriptions in the fire insurance company. These two notes and mortgages are in controversy in this action. Thereafter on May 1, 1907, at a stockholders' meeting, the capital stock of the Walla Walla Fire Insurance Company was reduced from 3,000 shares to 2,000 shares, and $100,000 was added to the surplus fund, so that the price of the shares was increased to $200 per share. The number of shares of each subscriber was reduced accordingly, but otherwise his subscriptions remained the same as originally. On June 20, 1907, the Hollon Parker Company by Orrin G. Parker, secretary, executed its note and mortgage for $55,600 in favor of J. L. Elam. This note and mortgage were, on the same day, transferred by Mr. Elam to the Walla Walla Fire Insurance Company, and was recorded subsequently on October 22, 1907. On July 20, 1907, the Hollon Parker Company, by Orrin G. Parker,

secretary, executed its notes and mortgages to the Walla Walla Fire Insurance Company, as follows: One for $2,500, one for $1,500, and one for $1,000. These mortgages were recorded in January, 1908. It is conceded upon this appeal that the mortgages for $2,500 and $1,500 were upon land owned by Hollon Parker personally, and that the Hollon Parker Company had no authority to execute the mortgages thereon. The judgment must therefore be affirmed in so far as it affects these two mortgages. All the mortgages above named, except the first one mentioned, are in controversy in this action. The first one named herein for $50,000 is in controversy in another action.

Shortly after the organization of the Walla Walla Fire Insurance Company, when this insurance company was seeking licenses to do business in other states, these notes and mortgages were held out by the officers of the insurance company as valid assets of the insurance company, and it was represented by Mr. Holloway and by Mr. Orrin G. Parker that these notes and mortgages were given to secure the payment by the Hollon Parker Company of stock subscriptions in the Walla Walla Fire Insurance Company. In order to obtain such licenses, it became necessary to have the mortgages recorded, which was done upon the dates stated. In December, 1907, stock to the amount of 924 shares in the Walla Walla Fire Insurance Company, which had been subscribed by Holloway and Parker jointly, was issued to the Hollon Parker Company, and receipted for by Orrin G. Parker, secretary of the Hollon Parker Company. This stock was paid for by the notes and mortgages which had been previously given to the amount of about $175,000, which notes and mortgages were then held or hypothecated by the Walla Walla Fire Insurance Company. On December 12, 1907, notice of a stockholders' meeting of the Hollon Parker Company was sent by mail to each of the stockholders of that company, stating that a meeting of the stockholders of that company would be held at the office of

the company on December 21, 1907, at two o'clock p. m., for the election of trustees and for the transaction of any other business that might lawfully come before that meeting. The meeting· was held at the office of the company at that time, and Orrin G. Parker and C. K. Holloway only attended. They represented individually one share each, and jointly as trustee for Hollon Parker 995 shares, of the 1,000 shares of the Hollon Parker Company. They caused the following entry to be made in the minutes of the Hollon Parker Company:

"Mr. O. G. Parker, secretary and treasurer of· the corporation, reported that the corporation had lately acquired 924 shares of the capital stock of the Walla Walla Fire Insurance Company, at a cost to this corporation of one hundred and eighty-five thousand ($185,000) dollars, for which the Hollon Parker Company have executed its obligation secured by mortgages and other collateral to the Walla Walla Fire Insurance Company, and that this corporation now owned said stock and had full authority to vote the same; all pursuant to authority conferred by its articles of incorporation and section 7054, Pierce's Washington Code, 1905; Session Laws, 1905, chap. 27. On motion the aforesaid purchase of said stock at said price of one hundred and eighty-five thousand ($185,000) dollars, the obligations and conveyances incurred and made to secure the payment of the same, and all acts of any and all officers and persons in relation to the same and in connection therewith, were all and singular ratified, confirmed and approved."

Thereafter, upon the strength of these notes and mortgages held by the Walla Walla Fire Insurance Company and the value of the property of the Hollon Parker Company as security, the Walla Walla Fire Insurance Company was permitted to do business in thirty-one other states besides this. In the year 1908, the Walla Walla Fire Insurance Company became indebted in a sum in excess of $190,000, with many creditors, and at the suit of the Hollon Parker Company, Dorsey M. Hill was appointed· receiver of the Walla Walla Fire Insurance Company, and these notes and

mortgages came into his possession. Hollon Parker afterwards brought this action to set the notes and mortgages aside.

The facts above set out are not disputed. In the voluminous record and briefs filed in this court it is sought by the appellant to show, that Hollon Parker is not authorized to maintain this action in his individual name; that he knew of the execution of the notes and mortgages upon the property of the Hollon Parker Company, or should have known of them, and thereafter acquiesced therein, and that the notes and mortgages are valid liens against the property of the Hollon Parker Company. The plaintiff maintains, that the Hollon Parker Company was a mere holding corporation; that his son Orrin G. Parker and C. K. Holloway had no authority to execute the notes and mortgages upon the real estate of the Hollon Parker Company; that the plaintiff was aged, infirm, and sick at Portland, Oregon, and had no notice or knowledge that his son, Orrin G. Parker, or Mr. Holloway was using the property of the Hollon Parker Company as a basis for organizing the Walla Walla Fire Insurance Company; that his first notice of the fact that they had done so was after the appointment of the receiver of the Walla Walla Fire Insurance Company; that his son, Orrin G. Parker, and Holloway had secretly and fraudulently executed the notes and mortgages without authority, and that therefore the notes and mortgages were and are void.

We may concede, for the purposes of this case, that the plaintiff may maintain this action in his personal capacity, and also that he had no knowledge that the property of the Hollon Parker Company was being mortgaged for the purpose of financing the Walla Walla Fire Insurance Company. There is abundant evidence in the record, however, to the effect that the plaintiff knew that his son, Orrin G. Parker, and Mr. Holloway had no means with which to organize the fire insurance company or to pay for the stock subscribed by them, except the property of the Hollon Parker Company,

and that this fire insurance company was organized upon the
credit of the Hollon Parker Company, and that no objec-
tions were made by him thereto.   But the lower court, after
hearing this evidence, found that the plaintiff had no such
knowledge, or any notice sufficient to put him on inquiry.
We shall, therefore, not notice this question further, but
shall assume, for the purposes of this case, that the plaintiff
had no notice of the fact that Orrin G. Parker and C. K.
Holloway were mortgaging the property of the Hollon
Parker Company for the purpose of purchasing stock in
the Walla Walla Fire Insurance Company, and that as soon
as the plaintiff discovered that fact, he brought this action
to set aside the mortgage.

It is probably true that, when the plaintiff organized the
Hollon Parker Company, he intended to make that company
a mere holding corporation to hold the title to his large real
estate interests during his lifetime and for convenience in
handling the same after his death, and he probably intended
to retain control of the affairs of the corporation during his
lifetime.   But it is plain from the articles of incorporation
themselves, which were prepared at the plaintiff's direction,
that the Hollon Parker Company was more than a mere hold-
ing corporation.   The powers of that company are stated
in its articles above quoted, to the effect that it is authorized
to purchase, sell, and lease real and personal property for its
own account or on commission for others, and to conduct
business of its own and for other persons, to own and hold
stock of other corporations, and to sell or otherwise dispose
of the same, if desired, to act as trustee, to own and operate
warehouses, to engage in the business of farming, and to do
such other business in connection with the aforesaid as may
properly be consistent with the object and purposes of the
corporation.   These powers are not limited to holding
merely.   They authorize an agency and traffic business, and
to purchase and sell stock in other corporations.   The plain-
tiff, after he had formed this corporation with powers as

stated, conveyed lands and property to it of the value of about $300,000. The principal place of business was designated as Walla Walla, Washington, and the plaintiff was the president and his only son was secretary and treasurer of the corporation.

In the year 1905, the plaintiff left Walla Walla on account of enfeebled health, and went to Portland, Oregon, where he has remained ever since. About a year after he went to Portland, Oregon, he transferred all of his stock in the corporation—995 shares—to his son, Orrin G. Parker, and Mr. Holloway, in trust. A written declaration of trust was made and accepted by the trustees. This declaration of trust, which is set out above, did not limit the trustees in the management of the business of the corporation. It reserved the issues and profits of the stock to the plaintiff during his lifetime, and made directions for certain things to be done after his death, but it made no reservation of the control of the stock or of the business of the corporation. Thereafter these two trustees, who held all the stock of the corporation except three shares, managed the business of the corporation as they saw fit, without supervision of any other person. They engaged in a money loaning business in the name of the corporation. The plaintiff knew of this fact. They were successful, and their success was pleasing to the plaintiff. They purchased stock in the Walla Walla Fire Insurance Company in their joint names. They purchased 924 shares in the name of the Hollon Parker Company, and executed the notes and mortgages of the Hollon Parker Company to pay for this stock. The purchase of this stock in another company was authorized by the articles of incorporation. The notes and mortgages were issued and delivered to the fire insurance company; and upon the faith of these securities, the fire insurance company was permitted to do business in this and many other states. These notes and mortgages were executed by "the Hollon Parker Company by Orrin G. Parker, secretary," with the seal of the

corporation affixed. It is said that these securities should have been executed by the president. The secretary was in charge of the principal office, but when the question was raised by the insurance commissioner, a meeting of the stockholders was called and the notes and mortgages were ratified by a vote of the stockholders. It is claimed by the plaintiff that he did not receive notice of this meeting. It is not disputed, however, that the notices were sent by mail, and that Orrin G. Parker and C. K. Holloway representing a large majority of the stock were present at that meeting, and voted all the stock as they undoubtedly had a right to do, and thereby ratified the notes and mortgages. So that, if the securities were not authorized when they were made, they became by ratification of the stockholders a valid obligation of the Hollon Parker Company.

The rule is that persons dealing with corporate agencies have a right to rely upon the apparent authority of those in charge of the corporate business, and for acts done within the scope of that authority the corporation is bound. *Livieratos v. Commonwealth Security Co.*, 57 Wash. 376, 106 Pac. 1125; *Brace v. Northern Pac. R. Co.*, 63 Wash. 417, 115 Pac. 841; *Slocum v. Seattle Taxicab Co.*, 67 Wash. 220, 121 Pac. 67. It is also the rule that, "whenever one of two innocent persons must suffer by the acts of a third, he who has enabled such third person to occasion the loss must sustain it." *Merchants Bank v. State Bank*, 10 Wall. 604; *Coolidge v. Schering*, 32 Wash. 557, 73 Pac. 682. This latter rule is controlling in this case. There can be no doubt that the plaintiff, Hollon Parker, placed his son, Orrin G. Parker, and C. K. Holloway in full and actual charge of the affairs and property of the Hollon Parker Company. This company had authority to purchase shares in other corporations. It did purchase 924 shares of stock in the Walla Walla Fire Insurance Company, and agreed to pay therefor $185,000, and executed notes and mortgages aggregating that sum, and delivered these notes and mort-

gages to the Walla Walla Fire Insurance Company. By reason of these notes and mortgages, the Walla Walla Fire Insurance Company was authorized to do business. It contracted large debts, and then failed with liabilities exceeding $190,000. The creditors of that corporation must now lose, or the Hollon Parker Company must pay its obligation. It is plain that the Hollon Parker Company should lose under the rule last stated. We think it is reasonably clear from the evidence in this case that Orrin G. Parker and C. K. Holloway thought that the Walla Walla Fire Insurance Company, at the time they purchased the stock for the Hollon Parker Company, would do a profitable business, and that the stock of the insurance company would be a good investment for the Hollon Parker Company, and that they purchased the stock in good faith for that reason. But, conceding that they conspired together and contracted the debts against the Hollon Parker Company without notice to Hollon Parker, in order to defraud and deceive him, and kept the mortgages from the record for a time for that purpose, still Hollon Parker placed these men in possession of his property with both apparent and actual authority to do as they did do; and therefore he must now suffer the loss, and not the innocent creditors of the fire insurance company, or third persons who were misled by the plaintiff's acts.

The judgment of the lower court is therefore reversed, and the cause remanded, with instructions to enter a decree foreclosing the mortgages set out in the cross-complaint, except the mortgages for $2,500 and $1,000 above referred to.

DUNBAR, C. J., MORRIS, and ELLIS, JJ., concur.