CITIZENS BANK, Appellant, v. PUBLIC DRUG COMPANY, Appellee.

BILLS AND NOTES:  Validity—Authority of President.  A showing that a promissory note was signed with the name of a corporation by one who was president, general manager, and a director of the corporation, and that the note was given for an obligation on the part of the corporation, creates a *presumption* that the note was authorized by the corporation.  Especially is this true ·when the president and his wife constitute a majority of the board of directors.

*Appeal from Pottawattamie District Court.*—ORVILLE D. WHEELER, Judge.

FEBRUARY 9, 1921.

ACTION at law upon a promissory note.  There was a directed verdict and judgment for defendant, and the plaintiff appeals.—*Reversed and remanded.*

*Walter S. Stillman,* for appellant.

*Kimball, Peterson & Smith,* for appellee.

WEAVER, J.—The note in suit is in the following form:

"P. O. Council Bluffs,
"State of Iowa,
"Date, Nov. 18, 1915.
"Six months after date for value received we promise to pay to the order of Partin Manufacturing Company, Incorporated, eight hundred dollars ($800.00) at First National Bank, Council Bluffs, Iowa.
" [Signed]    PUBLIC DRUG CO.,
"E. C. Bronson, Pres."

The petition is in the ordinary form, and declares upon the note as the obligation of the corporation.  The answer admits

that the note was executed and delivered to the payee by E. O. Bronson, who was at that time president of the defendant company, but alleges that Bronson had neither power nor authority to make or deliver the same for the company, or to bind the company to the payment of such obligation; that such act by Bronson was never ratified or approved by the company or by its board of directors, which alone had authority to execute or deliver such paper.

Further pleading, defendant alleges that said note was obtained by fraud and misrepresentation, and that the plaintiff acquired it from the payee with notice of the fraudulent character of its origin.

A jury having been impaneled for the trial of these issues, plaintiff offered in evidence the note sued upon. The defendant objected to the offer, because of the absence of any showing or proof that the president of the company had authority to bind it by the execution of such an instrument. After some discussion, the court sustained the objection, and excluded the note. Bronson, then being called as a witness for the plaintiff, testified, among other things:

"I was president of the Public Drug Company. I was also its manager and a director. The other members of the board of directors were my wife and Dr. O'Keefe."

It also appeared in evidence that the payee named in the note is a promoter of a method of advertising for different lines of business, by the familiar, catch-penny scheme of so-called "contests," in which prizes of various degrees of alleged excellence are distributed. The note was made in consideration of the undertaking by the Partin Company to furnish certain materials and goods to be used in a contest by or for the Public Drug Company, and to render certain assistance and service in carrying it to a conclusion. The record concerning this part of the business is incomplete and fragmentary; but in view of the ruling by the court upon the admissibility of the note in evidence, we have no occasion on this appeal to consider the case upon its merits.

The articles of incorporation of the Public Drug Company were also put in evidence. The only reference therein made to the management or control of the corporate business is a pro-

vision that the "affairs of the company shall be conducted by a board of directors." After the testimony given by Bronson, as above mentioned, the plaintiff again tendered the note in evidence, and, the defendant renewing its objection made to the offer originally, the court adhered to its former ruling.

The parties having rested, the defendant moved for a directed verdict in its favor, because of failure of proof in support of plaintiff's claim. Sustaining said motion, the court charged the jury that:

"It not appearing that the person who appears to have signed this note was authorized by the governing board of directors to sign it, or authorized by proper officers to sign, or that there was any authority on his part to sign it, the court will hold that plaintiff cannot recover, and your verdict will be for the defendant."

Verdict was returned accordingly, a motion for new trial denied, and judgment entered against plaintiff for costs.

In this court, appellant states that the sole question for consideration is "whether a promissory note issued in the name of the corporation to pay an obligation of such corporation by its president, who is also a director and general manager of the business of the company, is *prima facie* entitled to credence."

Counsel for appellee parries this proposition by saying that the note was not "issued in the name of the corporation," but was "signed with the corporation's name by E. O. Bronson, President." This distinction savors of hairsplitting, and is, we think, without merit. Objection is also raised in argument that the note was not again offered in evidence after the testimony bearing on Bronson's relation to the corporation and to the business was introduced. An amended abstract shows that this objection also is without support in the record. The question as stated by appellant fairly presents the proposition on which we must rule.

The appellee relies for an affirmance of the judgment below upon the authority of *Goodman Mfg. Co. v. Mammoth V. C. Co.*, 185 Iowa 253, and *Ney v. Eastern Iowa Tel. Co.*, 162 Iowa 525. In the *Ney* case, the corporation was sought to be held to liability for the fees of an attorney, who was alleged to have performed services in its behalf at the request or upon employ-

ment by its president. In holding the corporation not liable, we said:

"There is no allegation that Rohret [the president] had any authority to employ plaintiff and bind defendant other than that arising out of the fact that he was president of the defendant company."

And we elsewhere stated that the question so presented "for our consideration is whether or not the president of the corporation, as such, has authority by virtue of his office, to bind the corporation and its stockholders by contracts made in its name, where no authority is shown to be invested in him to do so, except that which arises from the fact of his office."

That the answer to the question so stated must be in the negative is hardly open to question, but it does not necessarily control the case at bar. The plaintiff's case does not here rest upon the proposition that Bronson's authority to bind the corporation by promissory note executed for it or in its name may be presumed or inferred from the mere fact of his official position. To the proof of the fact that he was president, or chief executive officer of the company, is added other evidence that he was also one of its three directors and the manager of its business, which, as we gather from the record, was the carrying on of a retail trade in drugs. The entire company was made up of Bronson and his wife and one O'Keefe, who is not shown to have any active hand in the business. Under such circumstances, we think it was a fair question for the jury whether contracts made in the company's name by its president and manager, within the scope of the business it was organized to carry on, were made with the implied authority of the corporation; and if so, and the note in suit be found to have been a contract of that character, and no other defense be established, then plaintiff would be entitled to recover. That authority of the president or of the manager of its business to bind a corporation by contracts made in its name or behalf need not be shown by formal vote or order of its board of directors, or by formal record, is well established. It has been expressly held by this court that:

"The law, however, seems to be well settled that, in the absence of any showing to the contrary, the president of a cor-

poration will be presumed to have authority to act in all matters arising in the ordinary course of its business. As the head of the corporation, which, of necessity, must act through some agency, the natural inference is that he, as its president, had been endowed with the power to direct its operation, and manage the transaction for which it was organized." *White v. Elgin Creamery Co.*, 108 Iowa 522, 526; *Ney v. Eastern Iowa Tel. Co.*, 162 Iowa 525.

In the last-cited case, we also quoted approvingly from *Sherman Center Town Co. v. Swigart*, 43 Kan. 292, as follows:

"Where the president and secretary of a corporation act openly and publicly as agents of the company, with full knowledge and acquiescence of the directors in making contracts, and generally in managing its business, with the understanding and acquiescence of the directors that they shall so act, the corporation will not be relieved from liability upon the contracts so made, and upon the mere ground that the directors failed to formally confer authority on these officers by vote or resolution entered on the records of the corporation."

See, also, *National State Bank v. Vigo County Nat. Bank*, 141 Ind. 352; *Union G. M. Co. v. Rocky Mt. Nat. Bank*, 2 Colo. 248; *Glover v. Lee*, 140 Ill. 102; *Corcoran v. Snow Cattle Co.*, 151 Mass. 74; *Citizens Nat. Bank v. Wintler*, 14 Wash. 558; *Patteson v. Ongley Elec. Co.*, 87 Hun (N. Y.) 462; *Spangler v. Butterfield*, 6 Colo. 356; *Northern C. R. Co. v. Bastian*, 15 Md. 494; *Merchants' Nat. Bank v. Citizens' G. L. Co.*, 159 Mass. 505 (38 Am. St. 453).

It has also been frequently held that persons dealing with corporate agencies have a right to rely upon the apparent authority of those in charge of the corporate business, and that for acts done within the scope of that authority the corporation is bound. *Parker v. Hill*, 68 Wash. 134; *Pacific State Bank v. Coats*, 205 Fed. 618.

Our recent case, *Goodman Mfg. Co. v. Mammoth V. C. Co.*, supra, cited by appellee, goes no further than to affirm the rule of the *Ney* case, that authority to bind a corporation by promissory note or other contract cannot be inferred from the simple fact that the person assuming to so act is its president. Such, also, is the utmost effect of *Gould v. Gould & Co.*, 134

Mich. 515 (96 N. W. 576). Indeed, the *Gould* case, after stating the general rule as above indicated, expressly affirms the proposition that:

"Where there is evidence showing that the president of a corporation is engaged in managing the business, such powers .will be ascribed to him as are requisite in the conduct of the business of the character involved."

See, also, *Ceeder v. Loud & Sons Lbr. Co.*, 86 Mich. 541 (24 Am. St. 134); and *Africa v. Duluth News Trib. Co.*, 82 .Minn. 283.

To hold otherwise would be to encourage fraud and unconscionable advantage in business, where candor and good faith ought to be the rule. Under the laws of this state, a man may organize himself into a corporation, or he may take in one or more other real or nominal shareholders, and, by vesting the corporate management in a board of three directors, of which he and his wife are a majority, continue in control of the corporate property and business as absolute and complete as if he were the sole individual owner. In such case, it would be a gross miscarriage of justice if, when the family corporation is called upon to perform contracts made by its head and manager in its name, ·its creditors should be held remediless because not able· to show some provision in the articles of incorporation or by-laws or recorded action of the board of directors authorizing the act done by the president and manager.

It is not easy to reconcile all the very many precedents which deal with this and kindred questions, nor shall we attempt it. The clear weight of authority, however, is with the rule that authority to bind a corporation to the payment of a promissory note is not to be implied from the mere fact that the person assuming to represent it is its president; yet such authority may be found in the fact that the corporate business has been entrusted to his management and control to such an extent as to justify persons dealing with him in believing that he has been clothed with authority to represent it.

The evidence along this line, while not as clear or explicit as could be wished for, nor as clear as it might easily have been made with a little direct inquiry into the manner and method of carrying on the corporate business generally, is still, in our

judgment, sufficient to make a prima-facie case for a recovery by plaintiff; and the exclusion of the note from the jury and the peremptory direction of a verdict for the defendant constituted prejudicial error.

It must be understood, we do not hold, as a matter of law, that Bronson was authorized to execute notes of the corporation, but simply that plaintiff made a prima-facie showing entitling it to go to the jury on that question. And to this we may add that, if it be found that Bronson did have express or implied authority to execute corporate notes in furtherance of the business which the corporation was organized to carry on, then the further question whether the note in suit and the contract, if any, in connection with which it was given were within the legitimate scope of such authority is in no manner here determined or adjudicated.

For the reasons stated, the judgment of the district court is reversed, and cause remanded for a new trial.—*Reversed and remanded.*

EVANS, C. J., PRESTON and DE GRAFF, JJ., concur.